1 So.3d 355 (2009)
Kurt S. BROWNING, Secretary of the State of Florida, Appellant,
v.
ANGELFISH SWIM SCHOOL, INC., et al., Appellees.
No. 3D08-1827.
District Court of Appeal of Florida, Third District.
January 28, 2009.
*356 Bill McCollum, Attorney General, and Charles M. Fahlbusch, Senior Assistant Attorney General; Scott D. Makar, Solicitor General and Craig D. Feiser, Deputy Solicitor General, for appellant.
Wexler Wallace and Edward Wallace, Illinois; Andrew T. Trailor, Miami and Brian Pollock; Jorge A. Duarte, South Miami, for appellees.
Before SHEPHERD and SALTER, JJ., and SCHWARTZ, Senior Judge.
SALTER, J.
The Secretary of State of Florida, Kurt Browning, appeals a circuit court order certifying a class of corporate plaintiffs asserting that late annual report and reinstatement fees paid to the Secretary by them violated the Excessive Punishments section of the Florida Constitution. See Art. I, § 17, Fla. Const.[1] We affirm the *357 class certification order insofar as it addresses three of the four threshold requirements imposed by Florida Rule of Civil Procedure 1.220(a)these three are commonly referred to as numerosity, commonality, and typicality. We reverse and remand regarding the fourth requirement, howeveradequacy of the proposed class representativesbecause the relief sought by the plaintiffs, the likely out-of-pocket costs for the litigation, and the financial ability of the proposed representatives to bear those costs, were not adequately established by the appellees.

The Claims and the Procedural History
In September 2000, appellee Angelfish Swim School, Inc., a Florida corporation, filed a late annual report and paid a late charge of $400 to the Secretary as required by section 607.193(2)(b), Florida Statutes (2000). The late charge was payable in addition to the annual corporate report fee of $61.25, see section 607.0122, and the annual supplemental corporate fee of $88.75 then payable, see section 607.193(1), if the annual report and fees were remitted after May 1 of any calendar year. The second plaintiff below and appellee here, Steak on the Run, Inc., also a Florida corporation, alleged that it was administratively dissolved by the Secretary in October 1998, and in May 2000 was required to pay the $600 statutory reinstatement application fee, see section 607.0122(13), as well as the three outstanding annual report and supplemental corporate fees ($150 for each year).
These two plaintiffs alleged in their amended class action complaint that the $400 late charge and $600 reinstatement fee violated the excessive punishments provision, and in a single count Angelfish and Steak sought "declaratory relief" under "F.S. 68 et seq. [sic]."[2] The amended class action complaint also alleged that the late charges and reinstatement fees are a "denial of due process and equal protection under the law," but the equal protection claim was rejected by the trial court in an order granting partial summary judgment. The prayers for relief did not make it clearwhat monetary relief, if any, Angelfish and Steak sought as a result of the alleged unconstitutionality of the late charge and reinstatement application feea disgorgement of all such payments, or of only that portion of such payments found by the trial court to be "excessive."[3]
Discovery ultimately revealed that over 249,000 Florida corporations paid the $400 late fee between 1997 and 2007, and over 97,000 paid a $600 reinstatement application fee. The resulting arithmetic indicates that Angelfish and Steakeach of which lacked the attention or wherewithal to file a timely annual report or to remit $150 as required by Florida law[4]are *358 proposing that they are adequate class representatives for several hundred thousand separate entities that paid aggregate charges to the Secretary exceeding $150 million. As analyzed in greater detail below, if Angelfish and Steak are seeking a disgorgement of all those charges and a payment of statutory prejudgment interest on the charges, see section 55.03, Florida Statutes (2000) (applicable because the amounts in question are liquidated), the aggregate claim against the State of Florida would likely exceed $300 million.
Pre-certification discovery also included the depositions of the principals of Angelfish and Steak who would serve as the class representatives. The representative of Angelfish was unfamiliar with its fee agreement with counsel. Angelfish's counsel instructed the representative (who testified that he was the person with greatest knowledge of the corporation's assets, income, and liabilities for the period 1998 to present) not to answer questions regarding those "privileged financial matters." At the class certification hearing, Angelfish's representative testified that he thought he could afford a mailing, relying on personal and corporate funds, but he was uncertain what other costs might be involved in a class action.
Steak's corporate representative was more forthcoming about that corporation's financial condition, but the information was bleak. Steak had no assets at the time of the class certification hearing and had not had any assets or money for five or six years.
Nor did the class certification hearing shed additional light on the relief sought by the putative class. Counsel for Angelfish and Steak did not explain whether the single count amended complaint was limited to declaratory relief, or whether it sought a recovery of all late charges and reinstatement application fees paid, plus prejudgment interest, or whether it sought a recovery of only those charges and fees proven at trial to be "excessive."
Following the hearing, the circuit court entered the certification order, and this appeal followed.

Analysis
As noted, the first three elements of Rule 1.220(a) were unquestionably presentthe class is numerous, the claims of the putative class members involve common issues of law and fact, and the claims of the proposed class representatives are typical of those of the class as a whole. The fourth element, the adequacy of Angelfish and Steak as class representatives, is the issue here.[5]
Ordinarily, the merits of a class claim need not be addressed before the procedural question of class certification is determined. In some cases, however, the two inquiries are interrelated. The dimensions of a class action claim, including the types of relief sought, must be clear so as to guide the court's assessment of (1) the proposed class representatives' ability and financial capacity to prosecute the action diligently, and (2) proposed class counsel's experience and competence. The merits of the underlying claim also bear on the trial court's exercise of discretion regarding the costs of notice under Rule 1.220(d)(2). See Dep't of Agric. & Consumer Servs. v. Cox, 947 So.2d 561, 563 (Fla. 4th DCA 2006) "Unless otherwise ordered," the plaintiffs must bear those costs. Fla. R. Civ. P. 1.220(d)(2).
*359 In this case, it is evident that the Secretary will defend the lawsuit vigorously and thoroughlyif Angelfish and Steak clarify their complaint to confirm that they seek $150 million in disgorgements plus at least that amount again in prejudgment interest, the pretrial proceedings, trial, and appeal will be particularly protracted and expensive. If Angelfish and Steak are only seeking those amounts that are "excessive," the damages sought from the Secretary will still be huge. Presumably, expert accounting witnesses would be required to guide the trial court in determining what late charges and reinstatement application fees might be reasonable, and what amounts should be held excessive. The present record falls woefully short of demonstrating any capacity on the part of Angelfish and Steak to fund even a part of the costs[6] likely to be incurred in so substantial a case. See Brooks v. S. Bell Tel. & Tel. Co., 133 F.R.D. 54 (S.D.Fla.1990).
This claim is a novel one, and one which would (if validated) also seem to jeopardize a wide variety of statutory late fees in Florida.[7] Such fees and charges are routinely set by the legislature and are therefore presumptively excepted, under Article I, section 18 of the Florida Constitution (the section which immediately follows section 17), from the excessive punishments provision:
Administrative penalties.No administrative agency, except the Department of Military Affairs in an appropriately convened court-martial action as provided by law, shall impose a sentence of imprisonment, nor shall it impose any other penalty except as provided by law.
The phrase "except as provided by law" plainly implies that a "penalty" imposed by a duly-enacted statute is lawful. "As provided by law" means "as passed by an act of the legislature." Holzendorf v. Bell, 606 So.2d 645, 648 (Fla. 1st DCA 1992) (citation and internal quotation marks omitted).
Even in those few Florida cases which have considered the intention and application of the excessive punishments provision as applied to "fines," there is a "strong presumption that the amount of a fine is not unconstitutionally excessive if it lies within the range of fines prescribed by the legislature." Moustakis v. City of Ft. Lauderdale, No. 08-60124, 2008 WL 2222101, at *1 (S.D.Fla. May 27, 2008) (upholding an uncapped code enforcement fine which exceeded $700,000 on a property with a value of approximately $200,000) (citation omitted). In Riopelle v. Department of Financial Services, 907 So.2d 1220, 1223 (Fla. 1st DCA 2005), the court held that it was required to "grant substantial deference to the legislature's determination of the appropriate punishment for an offense."
But the late charges and reinstatement application fees at issue here are less "fines" imposed for a criminal offense than civil administrative penalties. See Hudson v. United States, 522 U.S. 93, 99-100, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997) (describing seven factors and the "clearest proof" standard applicable to the re-characterization of a civil remedy as a criminal penalty). As to the Secretary's statutory "late charges" and "reinstatement application *360 fees," there are even fewer reasons to second-guess the legislature. The federal Excessive Fines Clause[8]a template for Florida's Article I, section 17"was drafted in an era in which the amount of a fine was determined by the judiciary; the Clause was thus intended as a limitation on courts, not legislatures." United States v. 817 N.E. 29th Drive, Wilton Manors, Florida, 175 F.3d 1304, 1309 n. 8 (11th Cir.1999) (citation omitted).
Webster's Unabridged Dictionary refers as well to the distinctions between "fine" and "penalty." A fine is "a sum formerly paid as compensation or for exemption from punishment but now imposed as punishment for a crimedistinguished from forfeiture and penalty," while a penalty is a "sum recoverable in a civil action by the state for the less serious offenses."[9]
This brief incursion into the merits is sufficient to confirm that the case is essentially one of first impression and one likely to be fought hammer and tong; that the relief sought by Angelfish and Steak in the amended complaint must be clarified; that the legislatively-imposed charges and fees are entitled to presumptive validation, and thus the likelihood of shifting notice and other costs to the Secretary is low; and that the financial capacity of the proposed class representatives must be clearly established rather than merely argued by counsel.

Conclusion
For these reasons, we affirm the certification order in part and reverse it only as to the "adequacy" requirement imposed by Rule 1.220(a)(4). On remand, the trial court should require Angelfish and Steak to file a second amended complaint indicating "Class Representation" next to the caption;[10] clarifying in the unnumbered introductory paragraph, in paragraph "1," and in the prayer for relief the nature of any monetary relief sought beyond costs, interest, and attorney's fees; and clarifying whether relief is sought under a specific section of "F.S. 68[sic]," under one or more provisions of Chapter 86 of the Florida Statutes, or otherwise. When the pleadings are again at issue, the court should require Angelfish and Steak to demonstrate their financial capacity to participate in the costs likely to be incurred in a case of this size and scale. Should it consider it advisable as a matter of judicial efficiency, the court may also, of course, consider a renewed motion for summary judgment based on the second amended complaint and the legal issues raised in it and by this opinion.
Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.
SCHWARTZ, Senior Judge, concurs.
SHEPHERD, J., concurring in part, and dissenting in part.
The majority reverses the order certifying the class in this case to give the litigants a second chance to prove they are wealthy enough to serve as adequate representatives of the class. Although the ability and willingness of a class representative to finance the litigation is relevant to determining adequacy, see 5 Jerold S. Solovy, et al., Moore's Federal Practice § 23.25[2][d][i] (3d ed. 1997), I have deep reservations about making wealth a feature of a class determination. See Chisolm *361 v. TranSouth Fin. Corp., 194 F.R.D. 538, 555 (E.D.Va.2000) ("A test based upon the possession of deep financial reserves doubtless would render this class without any representative."). For decades, it has been ethically acceptable and the usual practice for counsel to fund the costs of class litigation. See Moore's, supra at § 23.25[2][d][iv]. Examples abound where class counsel have invested more and gained more than the litigants in such circumstances.
In my view, the class representatives and their counsel have proven themselves unqualified to prosecute this action on a more substantial groundtaking five years to get to this point. This is reason enough to reverse the order certifying the class without further labor below.
Florida Rule of Civil Procedure 1.220(d) requires a determination whether a claim or defense is maintainable on behalf of a class "[a]s soon as practicable after service of any pleading alleging the existence of a class...." The complaint in this case was filed on June 9, 2003. The action thereafter has progressed in fits and starts. The potential for class treatment surfaced early. On July 1, 2003, three weeks after filing the complaint, counsel for the plaintiffsthe same ones before us todayfiled their first motion to amend the complaint to add class allegations. Just sixty days later, on September 4, 2003, counsel filed a notice of voluntary dismissal of the motion citing, without explanation, the existence of a "pending motion to dismiss." More devoted counsel might have elected to dispatch the pending motion by exercising their unilateral right to file an amended class action complaint before a responsive pleading was filed. See Fla. R. Civ. P. 1.190(a).
It was not until March 21, 2005, a full eighteen months later, that counsel refiled their motion to add class action allegations. After setting and resetting the motion for hearing nine timesnone at the request of the Statethe second motion to add class action allegations was finally granted on January 13, 2006. The State promptly answered the amended class action complaint just two weeks later. A year and nearly four months after that, on May 2, 2007, to be exact, the class representatives and their counsel moved the trial court for class certification. That motion was heard the following year, on March 12, 2008, and the order granting class certification was signed by the trial judge on June 6, 2008, almost five years to the day after the action was filed. The glacial pace at which the plaintiffs and their counsel advanced this case to a certification determination makes a mockery of the "as soon as practicable" requirement of Rule 1.220(d).
The plaintiffs-appellants seek to excuse their delay in moving expeditiously toward class certification on the ground thatby objections to interrogatories provided to the plaintiffs in December 2003the State misled the plaintiffs regarding the feasibility of discovering the number of corporations that paid the late fees and reinstatement fees at issue by stating it would need to create a special computer program to generate the information requested. According to the plaintiffs, the truth did not emerge until March 12, 2007, when they finally elected to take their first deposition in the case, that of E.P. Jay Kassees, the Director of the Division of Corporations, who testified a special program was not needed. This excuse rings legally hollow on many levels, including the fact that the State revealed in these same interrogatory responses that from 1999-2003 between 130,000 and 160,000 registered Florida corporations received second or "late notices" for failure to timely pay their annual corporate renewal fee. This data alone suggests that numerosity was not likely to be *362 an issue in this class action case, and indeed it has not. See, e.g., Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473 (2d Cir.1995) (noting numerosity is presumed at a level of forty members (citing 1 Newberg On Class Actions 2d § 3.05 (1985 ed.))); Smith v. Glen Cove Apartments Condominiums Master Ass'n, 847 So.2d 1107, 1109-10 (Fla. 4th DCA 2003) (finding sufficient a class of more than 100). In addition, class actions existed long before computers. Counsel's failure to follow up on these answers for more than three years calls into question their interest, and therefore their adequacy, in pursuing and protecting the interests of the unnamed class members.[11]
The requirement of diligence in the pursuit of class certification is not a matter of mere judicial window dressing. Failure to timely certify prejudices putative class members by delaying recovery of funds to which they are ostensibly entitled. Delaying certification can foster a false sense of security in claimants who may sit on their rights in the mistaken belief they are being protected by the class counsel. If class certification ultimately is denied, the ability of putative class members to proceed thereafter might be barred or hindered.[12] Defendants, too, are entitled to know at the earliest practicable date whether they will be facing a limited number of known plaintiffs or a much larger mass of generally unknown plaintiffs. As then United States Court of Appeals Judge Kenneth Starr wrote in McCarthy v. Kleindienst, 741 F.2d 1406, 1412 (D.C.Cir.1984), a vintage case arising out of the 1971 "May Day" demonstrations throughout Washington, D.C. in protest against the Vietnam War, where the plaintiffs *363 moved for certification more than three years after filing of the class complaint:
Fundamental fairness, as well as the orderly administration of justice requires that defendants haled into court not remain indefinitely uncertain as to the bedrock litigation fact of the number of individuals or parties to whom they may ultimately be held liable for money damages. That is particularly true where, as here, the defendants were facing either thirty-nine named plaintiffs or a class of almost two hundred times the number of the original plaintiffs. Second, these rules foster the interests of judicial efficiency, as well as the interests of the parties, by encouraging courts to proceed to the merits of a controversy as soon as practicable. That, at bottom, is a matter of simple justice. As previously described, plaintiffs' three-year delay in moving for class certification indisputably thwarted these policies.
Similarly here, it took the plaintiffs five years from July 1, 2003, the date class treatment was first a gleam in the eye of class representatives, another year and a half (March 21, 2005) before the class representatives were motivated a second time to seek aggregation, then three more years almost to the day (March 12, 2008) before the class certification hearing was finally held, and another three months before the order certifying the classthe order pending review herefinally was entered. The putative class includes claimants extending back as far as nine years. After five years of litigation, the class representatives and their counsel have yet to prove they have satisfied all of the legal criteria necessary for certification. All of this bears strongly on the representation the class members are likely to receive in the future.
Although the class representatives and their counsel would like to lay the blame for their dawdling on the State, a cursory review of the record suggests purposeful dithering by the class representatives and their counsel. The docket reflects this case simply lumbered along for the first four years of its existence. Then, at a summary judgment hearing held during the summer of 2007, the trial judge held the charges at issue were, in fact, "fines" within the meaning of Article I, section 17 of the Florida Constitution, leaving but one remaining constitutional questionwhether they were "excessive." The progress of the case increased accordingly. Within weeks after the ruling was reduced to writing on September 4, 2007, class counsel sought to amend its one-count declaratory class complaint to "clarify" for the first time that, if successful, they intended to seek an award of "monetary (compensatory) damages, [and a] refund in favor of Plaintiffs and the class on all claims." It was during this same period that counsel also finally sought a hearing to certify the class that for years had been in their contemplation. While this burst of activity was commendable, one might reasonably conclude from these events that class counsel in this case are nothing more than fair weather counsel. Fair weather counsel are not, in my estimation, adequate counsel. "`Deliberately delaying a class certification determination does not represent an effort to resolve the issue `as soon as practicable.'" Grosso v. Fid. Nat'l Title Ins., 983 So.2d 1165, 1170 (Fla. 3d DCA 2008) (quoting In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 787 (3d Cir.1995)). There is reason to believe that is precisely what occurred in this case.
Federal courts are not reticent to deny class certification motions where class representatives and their counsel are not diligent. This is so even where local rules do *364 not seek to manage class certification with deadlines for filing a certification motion.[13]See Andrews v. Bechtel Power Corp., 780 F.2d 124, 131 (1st Cir.1985) (trial court did not abuse its discretion by limiting class due to "inexcusably long [three year] delay in the prosecution of plaintiffs' case"); Dudo v. Schaffer, 91 F.R.D. 128, 136 (E.D.Pa.1981) (denying class certification where plaintiffs failed to move for class certification for eleven-and-a-half months after class action discovery was completed); In re Folding Carton Antitrust Litig., 88 F.R.D. 211, 214-15 (N.D.Ill.1980) (denying class certification where proposed class representatives failed to file motion to certify until four years after start of antitrust litigation and two-and-a-half years after denial of prior motion to certify); Clanton v. Orleans Parish Sch. Bd., 72 F.R.D. 164, 167 (E.D.La.1976) (filing motion for class certification two years after first motion for class certification was denied and six weeks before trial court found "not good faith compliance with the spirit of [Federal Rule of Civil Procedure 23(c)(1)]"). Actual prejudice need not be shown. See Folding Carton, 88 F.R.D. at 214 (citing E. Tex., 431 U.S. at 395, 97 S.Ct. 1891).
We likewise should not be reticent to fully reverse the class certification order in this case. Whether measured from the date of the filing and withdrawal of the first motion to add class allegations, the date of the filing of the second such motion, or the date that motion finally was granted on January 13, 2006, the class representatives and their counsel have utterly failed the diligence prong of Rule 1.220(d) in this case. Because they have failed to demonstrate "the forth-rightness and vigor with which the representative party [should] be expected to assert and defend the interests of the class, so as to assure them due process[,]" Mersay v. First Republic Corp. of Am., 43 F.R.D. 465, 470 (S.D.N.Y.1968), the order certifying the class should be reversed without leave to conduct further proceedings.
NOTES
[1] Article I, section 17, provides in pertinent part:

Excessive fines, cruel and unusual punishment, attainder, forfeiture of estate, indefinite imprisonment, and unreasonable detention of witnesses are forbidden.
The amended complaint makes the same claim under the Excessive Fines Clause of the Eighth Amendment to the United States Constitution.
[2] Although the references to Chapter 68 of the Florida Statutes ("Miscellaneous Proceedings"), appear in two separate prayers for relief, the plaintiffs more likely intended to refer to Chapter 86, "Declaratory Judgments." Section 68.01, Florida Statutes (2000), captioned "Declaring tax assessment invalid," would not appear to apply to any charge, fee, fine, or penaltyonly to a tax assessment. This is one of several open issues remanded for clarification.
[3] In a reply in support of their motion to tax attorneys' fees and costs filed the day before oral argument, Angelfish and Steak maintain that they were allowed to amend the complaint a second time "during the pendency of this appeal" to add a prayer for monetary damages. As described in this opinion, that amendment and the specific relief sought should be considered as part of the remanded class certification hearing. The amendment is not part of the record here.
[4] The pertinence of these threshold omissions by Angelfish and Steak is obviousa single mailout to 346,000 prospective class members at 42 cents per envelope would cost over $145,000.
[5] Similarly, but for our questions regarding the relief actually being sought and the adequacy of the putative class representatives, the other requirements of Rule 1.220(b) would be satisfiedthe common issues predominate, and class representation would be superior to other available methods for the fair and efficient resolution of the claims.
[6] While the class's attorney's fees may be contingent, the costs of mailouts, administration of opt-outs, establishment of a web site, expert witness fees, document production, and transcripts, for example, generally fall in significant part on the class representatives.
[7] Property taxes that are not paid on time carry a variety of additional charges, for example, including an 18% per annum interest rate between delinquency and tax certificate sale, which bear no apparent relationship to administrative costs or then-prevailing market rates. See § 197.172, Fla. Stat. (2008).
[8] Amend. VIII, U.S. Const.
[9] Webster's Third New International Dictionary of the English Language, Unabridged (3d ed. 1986) (italics in original).
[10] See Fla. R. Civ. P. 1.220(c)(1).
[11] Courts and commentators have long recognized the existence of an overlap between the federal counterparts to Florida Rule of Civil Procedure 1.220. See Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 626 n. 20, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (noting tendency of commonality and typicality to merge with adequacy); In re Vesta Ins. Group, Inc., Secs. Litig., 1999 WL 34831475, *1 (N.D.Ala. Oct. 25, 1999) (noting "considerable overlap among [all] Rule 23(a) requirements"); In re Commercial Tissue Products, 183 F.R.D. 589, 593 (N.D.Fla.1998) (noting overlap between Federal Rule of Civil Procedure Rule 23(a) requirements and Rule 23(b)(3)); see also Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) (noting tendency of commonality, typicality and adequacy to merge); see generally Moore's, supra at § 23.20. The analysis made here could just as well have been made under Florida Rule of Civil Procedure 1.220(a)(4), which requires the class proponent to demonstrate that "the representative party can fairly and adequately represent the class." (emphasis added). See Feder v. Elec. Data Sys. Corp., 429 F.3d 125, 130 (5th Cir.2005) ("The `long established standard' for the adequacy determination... requires `an inquiry into ... the zeal and competence of representatives' counsel...." (quoting Berger v. Compaq Computer Corp., 257 F.3d 475, 479 (5th Cir.2001))); see also Evans v. IAC/Interactive Corp., 244 F.R.D. 568, 577 (C.D.Cal.2007) (holding that in determining adequacy, "courts may consider the actual progress of the proceedings to that point. Delays in seeking class certification, a failure timely to prosecute the litigation, and any failure to comply with reasonable disclosure obligations or discovery requests are factors that suggest the class representative is inadequate" (citing E. Tex. Motor Freight Sys., Inc. v. Rodriguez, 431 U.S. 395, 404-05, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977))).
[12] Although the statute of limitations typically is tolled for asserted class members who later file actions of their own from the time a class complaint is filed to the time certification is denied, this temporal forgiveness extends only so long as the claims filed in the latter complaint are the same as filed in the earlier complaint. Hromyak v. Tyco Int'l, Ltd., 942 So.2d 1022 (Fla. 4th DCA 2006) (citing Am. Pipe & Constr. Co. v. Utah, 414 U.S. 538, 554-55, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974)); see also Crown, Cork & Seal Co. v. Parker, 462 U.S. 345, 350, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983). As indicated by the majority, the extent of the claims in this case have been hotly contested over the years.
[13] Electronically assisted research reveals that twenty-eight of the ninety-four United States District Courts have adopted class action management rules that include deadlines for filing certification motions. See E.D. & W.D. Ark. R. 23.1(3), 26.1(13); C.D. Cal. R. 23-3; D. Conn., Standing Order on Scheduling in Civil Cases, 2(b) (Dec. 2007), available at http://www.ctd.uscourts.gov/; D.D.C. R. 23.1; M.D. Fla. R. 4.04(b); N.D. Fla. R. 23.1(b); N.D. Ga. R. 23.1(B); S.D. Ga. R. 23.2; N.D. Ind. 23.1(b); S.D. Ind. R. 23.1(b); N.D. & S.D. Iowa Civ. R. 23(a); D. Kan. R. 23.1(b); E.D. & M.D. & W.D. La. R. 23.1B; W.D.N.Y. R 23(d); M.D.N.C. Civ. R. 32.1(b); N.D. Oh. Civ. R. 23.1(c); E.D. Pa. R. 23.1(c); M.D. Pa. R. 23.3; M.D. Tenn. R. 23.01(b); N.D. Tex. R. 32.2; W.D. Tex. Civ. R. 23; D. Utah Civ. R. 23-1(d); D. Vt. R. 23.1(c); W.D. Wash. Civ. R. 23(f)(3). In most cases, the deadline is ninety days, usually subject to extension, if necessary, to allow the parties to gather information necessary to make the certification decision. In each of the cases next cited, the United States District Court had not adopted a deadline for filing a motion or the certification motion preceded the adoption of a deadline by that court.