Walter DUDO

v.

Charles J. SCHAFFER, Jr., et al.

Civ. A. No. 78–467.

United States District Court,
E. D. Pennsylvania.

June 12, 1979.

**696**

Lewis Kates, James F. Guidera, Philadelphia, Pa., for plaintiff.

James J. Leyden, Philadelphia, Pa., for Teamsters Pension Trust Fund.

Ira R. Mitzner, Washington, D. C., for International Brotherhood of Teamsters.

Edward Davis, Philadelphia, Pa., for Joint Council 53.

William J. Einhorn, Philadelphia, Pa., for Local 107.

## MEMORANDUM

LUONGO, District Judge.

Plaintiff, a former member of the Highway Truck Drivers and Helpers Union, Local 107 of the International Brotherhood of Teamsters, filed the original complaint in this action after learning that he was ineligible for pension benefits from the Teamsters Pension Trust Fund of Philadelphia and Vicinity because of a break in his covered employment. By leave of court, plaintiff filed an amended complaint containing class action allegations on November 21, 1978. In the amended complaint, as in the original complaint, plaintiff asserts three distinct legal theories. Count I is grounded in the general antifraud provisions of the federal securities laws. Count II is based upon section 302(c)(5) of the Labor Management Relations (Taft-Hartley) Act, 29 U.S.C. § 186(c)(5) (1976). Finally, Count III is an estoppel claim based upon Pennsylvania law. Defendants are the administrator and the trustees of the Teamsters Pension Trust Fund of Philadelphia and Vicinity (Trust Fund), the Trust Fund itself, the Highway Truck Drivers and Helpers Union (Local 107), the Teamsters' Joint Council No. 53 (Joint Council), and the International Brotherhood of Teamsters (IBT). Presently before me are plaintiff's motion for class action certification with respect to Count II and defendant IBT's motion for summary judgment on Counts II and III. For the reasons hereafter stated, I conclude that both motions should be denied.

The amended complaint alleges the following facts. Walter Dudo was a member of both Local 107 and the IBT for most (if not all) of his working years, and he looked to the Teamsters' Pension Plan of Philadelphia and Vicinity as an eventual source of pension benefits. Amended Complaint ¶ 7; Exhibit 3 to Answer of Trust Fund (Document No. 6). The Plan, which is a joint employer-union pension plan under the Labor Management Relations (Taft-Hartley) Act, 29 U.S.C. § 186(c)(5) (1976), is administered by the Trust Fund, its trustees, and its administrator, all of whom are named as defendants herein. Under the Plan, an employee's entitlement to retirement benefits is determined by reference to the number of years of "covered employment" he has completed. "A year of covered employment is a calendar year in which contributions for at least 175 days were made to the [Trust Fund] on the employee's behalf by a covered employer." Amended Complaint ¶ 5. However, "[w]here an employee is not in covered employment for a period of 156 or more consecutive weeks, he is considered to have a 'break in employment' and is not given any credit for [any] covered employment prior to that break." Id. This break-in-service rule was applied in a fashion that left Dudo ineligible for any pension benefits.

Dudo was born on March 29, 1917. At the time of the events that gave rise to this litigation, he "was a functional illiterate, having obtained a partial grade school education." Id. ¶ 6. As of July, 1960, the Trust Fund had credited Dudo with nineteen and one-half years of covered employment. Id. ¶ 8. This figure, moreover, did not reflect "proper credit" for Dudo's twenty-six months of "honorable military service" during the Second World War. Id. In July of 1960, "while working for a covered employer, Dudo sustained a severe injury to his back, necessitating hospital treatment, a lengthy convalescence and render-

ing him disabled and unable to resume work as either a truck driver or as a platform worker engaged in the lifting and handling of heavy items." *Id.* ¶ 9. In 1964, Dudo was advised by Local 107 and by defendant Cohen, an "authorized official" of Local 107, not to apply for *disability* retirement benefits, but instead to "accept employment as a covered employee with a covered employer, Charles Benjamin, [Inc.,] as a watchman" so that he could accumulate benefits under the Plan and eventually obtain greater *normal* retirement benefits. *Id.* ¶ 11. Local 107 and Cohen failed to advise Dudo that this prospective employer would not be required to make contributions to the Trust Fund on Dudo's behalf; indeed, they "advised Dudo to the contrary." *Id.* Neither Local 107, nor Joint Council, nor the IBT advised Dudo that employer contributions would not be made on his behalf. *Id.* "Relying on all of the said representations as aforesaid, Dudo accepted said employment with the said Charles Benjamin [, Inc.] in early 1964 and continued in said employment until 1967." *Id.* ¶ 12.

Although Dudo was unaware of this at the time, "his employment with Charles Benjamin [, Inc.] in 1963, 1964 and 1965, not only was not as a covered employee, but was considered by the defendants as a 'break in employment' under the Plan for more than 156 weeks, forfeiting his past credited service of 19 & ½ years, the pension contributions made on his behalf to the Plan and [Trust Fund,] and his pension rights thereunder." *Id.* ¶ 13.

From 1966 until 1975, Dudo worked as a covered employee for a covered employer, obtaining during that period credit for two years of covered employment and vainly working sufficient weeks not to incur a break in employment during that period. In 1970, his disability became aggravated, and Dudo inquired of the Trust Fund's administrator, defendant Schaffer, concerning his eligibility for disability retirement benefits. Schaffer advised him "to continue his work until such time as he could obtain normal retirement benefits." *Id.* ¶ 15. Dudo therefore continued in covered employment "until about 1973 and thereafter

when he again sought advice from the Administrator and from [Local 107] concerning the manner in which to apply for [disability retirement benefits or normal retirement benefits], but [Local 107], Administrator, and [Trust Fund] failed and refused to advise Dudo of his rights, failed and refused to give him the appropriate application forms and failed and refused to advise him of his purported ineligibility by reason of alleged 'break in employment.'" *Id.* Finally, by letter dated March 1, 1977, defendant Schaffer advised Dudo of his ineligibility for pension benefits under the Plan. *Id.* ¶ 16; Dudo Affidavit ¶ 13. Dudo then instituted this lawsuit.

The amended complaint, which contains class action allegations, seeks the following relief:

"(a) An award of the pension payments [Dudo] should have received with no break in service and giving to him credit for the contributions that should have been made by reason of his employment with Charles Benjamin.

(b) Reasonable counsel fees, costs and interest.

(c) An Order declaring [Dudo's] pension rights and those of aggrieved class members under the Plan to be mature and valid and subsisting.

(d) An Order requiring the Defendants to continue to pay aggrieved class members monthly pension as aforesaid.

(e) Exemplary damages of $100,000.00.

(f) A Decree that the 'break in employment' provision of the Plan [is] invalid and an Order entitling aggrieved class members to damages resulting from the wrongful denial of benefits thereunder.

(g) Such other and further relief as may be just, equitable and appropriate in the circumstances."

Amended Complaint at 13.

## COUNT I UNDER THE FEDERAL SECURITIES LAWS

■ Before I turn to plaintiff's motion for class action certification with respect to

Count II, a brief comment on Count I is in order. Count I alleges violations of the general antifraud provisions of the federal securities laws, and it rests on the premise that a compulsory, noncontributory pension plan (such as the Plan referred to above) is a "security" within the meaning of those statutes. *See Daniel v. International Brotherhood of Teamsters,* 410 F.Supp. 541 (N.D.Ill.1976), *aff'd,* 561 F.2d 1223 (7th Cir. 1977), *rev'd,* 439 U.S. 551, 99 S.Ct. 790, 58 L.Ed.2d 808 (U.S.1979). Following the Supreme Court's recent decision in *Daniel, supra,* which squarely rejected this premise, defendant IBT moved for summary judgment on Count I. The other defendants have not filed formal motions as yet, perhaps because plaintiff's counsel had announced his intention to initiate a voluntary dismissal of that count, but all parties agree on the legal insufficiency of Count I in the wake of *Daniel.* I shall simply enter an order dismissing Count I for failure to state a claim.

## MOTION FOR CLASS ACTION CERTIFICATION AS TO COUNT II

■ Count II of the amended complaint is based on section 302(c)(5) of the Labor Management Relations (Taft-Hartley) Act, 29 U.S.C. § 186(c)(5) (1976). In general, section 302 of the Taft-Hartley Act flatly "prohibits payments to unions by employers." *Knauss v. Gorman,* 583 F.2d 82, 85 (3d Cir. 1978); *see Walsh v. Schlecht,* 429 U.S. 401, 403, 97 S.Ct. 679, 50 L.Ed.2d 641 (1977); 29 U.S.C. § 186(a) (1976). Section 302(c)(5), however, carves out an exception for moneys "paid to a trust fund established . . . for the sole and exclusive benefit of the employees of such employer and their families and dependents," provided that the trust fund satisfies certain other statutory requirements. 29 U.S.C. § 186(c)(5) (1976).

Dudo asserts in Count II that the Trust Fund here is *not* for the "sole and exclusive benefit" of the employees, due to the rigid, inflexible operation of the break-in-service rule, and that this amounts to a violation of section 302.[1]

Dudo moves for class action certification with respect to Count II. According to his motion papers, he seeks "to be certified as a representative of a class of all present, past and future participants in the Teamsters Pension Trust Fund of Philadelphia and Vicinity." Motion for Class Action Certification (Document No. 27) ¶ 1.

In evaluating the propriety of class action certification, it is helpful to bear in mind Dudo's description of his Taft-Hartley claim:

> "The plaintiff does not contend that *any* break in employment rule is invalid. To prevail in his claim the plaintiff will prove that the present break in service rule is unreasonable and hence invalid insofar as it causes the forfeiture of prior credited service *even where the break is involuntary or was induced by the Union and the [Trust Fund].*"

Plaintiff's Memorandum (Document No. 27) at 8 (citations omitted, emphasis supplied).

Although much will depend on how "involuntary" and "induced" are defined, I cannot say at this early stage in the proceedings that Dudo's legal theory is inherently unsuited to class-action treatment. The issue here is whether, with respect to this specific legal theory, the proposed class meets the requirements of Rule 23. Defendants urge that it does not, and I agree.

■ Rule 23(a)(1) authorizes certification only where the proposed class "is so numerous that joinder of all members is

1. Dudo alleges a structural defect in the Plan, and he invokes this court's jurisdiction under the general federal-question provision, 28 U.S.C. § 1331(a) (1976), rather than under § 302(e) of the Taft-Hartley Act, 29 U.S.C. § 186(e) (1976). The court of appeals recently observed:

"There is some uncertainty whether § 302(e) in fact confers jurisdiction, or merely authorizes a cause of action and withdraws a bar to jurisdiction under 28 U.S.C. § 1331 and § 1337. Under either view, jurisdiction is present here."

*Knauss v. Gorman,* 583 F.2d 82, 86 n.9 (3d Cir. 1978) (citations omitted).

The same holds true in this case.

impracticable." This numerosity requirement is what precludes certification of a class at this time. However, "a court cannot determine whether the numerosity requirement has been satisfied until it evaluates any objections bearing on the proper scope of the class." *Wajda v. Penn Mut. Life Ins. Co.,* 80 F.R.D. 303, 313 (E.D.Pa. 1978). Accordingly, I shall first consider the proper scope of the proposed class, and then return to the question of numerosity.

As I noted earlier, plaintiff seeks to represent *all* past, present, and future participants in the Trust Fund. Amended Complaint ¶ 30. Defendant Trust Fund has averred in its answer that some 1800 employers make contributions into the Trust Fund on behalf of their employees. Answer (Document No. 20) ¶ 4. It follows from this that the broad class defined by plaintiff would contain no fewer than 1800 employees and would thus easily satisfy the numerosity requirement. That broad class, however, is objectionable on other grounds.

Plaintiff challenges the break-in-service rule *only* insofar as it requires a forfeiture of credited service where an employee's break in service either was involuntary or was induced by representatives of the employee's union or the Trust Fund. *See* Amended Complaint ¶ 24; Plaintiff's Memorandum (Document No. 27) at 8. In light of plaintiff's formulation of his section 302 claim, only employees who forfeited credit for covered employment under these circumstances may properly be included in the proposed class. *See generally Souza v. Scalone,* 64 F.R.D. 654, 656–58 (N.D.Cal. 1974), *vacated per curiam on other grounds and remanded,* 563 F.2d 385 (9th Cir. 1977); *Insley v. Joyce,* 330 F.Supp. 1228, 1234–35

(N.D.Ill.1971). Most employees who are Trust Fund participants presumably have *not* forfeited credit in this manner. They have sustained no injury, they have no claims under the Taft-Hartley Act, and they would derive no benefit from a judgment for plaintiff on Count II of the complaint. To restate the foregoing in terms of Rule 23, plaintiff's claim is not typical of the claims of these employees, because they have no claims at all. In short, they are not proper class members. *Contra, Daniel v. International Brotherhood of Teamsters,* No. 74 C 2865 (N.D.Ill. June 29, 1977) (memorandum opinion and order certifying a class of all pension fund participants).[2]

By way of response, plaintiff argues that some of these employees may, at some future date, run afoul of the break-in-service rule just as he did, and that the class should therefore include all participants in the Trust Fund. I cannot accept this position. True, courts often define classes to include persons who have not yet been affected by challenged policies, but who may be affected by them in the future. *See, e. g., Wetzel v. Liberty Mut. Ins. Co.,* 508 F.2d 239, 254 (3d Cir.) (hiring and promotion policies that discriminated against women), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975). This is done to insure that any injunctive relief won by the named plaintiffs on behalf of similarly situated persons will run in favor of those who first encounter the challenged policies after the litigation has ended. With respect to the numerosity requirement, however, these "future" class members cannot be taken into account unless some basis exists for a reasonable approximation of their number. *See also Barrett v. Thorofare Mkts., Inc.,* 77

---

**2.** The complaint in *Daniel* sought relief under the federal securities laws, the Taft-Hartley Act, and three distinct common-law theories. Judge Kirkland certified the broad class just noted with respect to *all six counts* of the complaint, and he did not focus on the much narrower issues that have been raised in this litigation. Accordingly, I do not view his ruling as persuasive with regard to the proper scope of a class under § 302(c)(5).

Judge Kirkland's ruling on the motion for class action certification came *after* defendants

had taken an interlocutory appeal from his ruling that the federal securities laws applied to the pension plan at issue there. *See Daniel v. International Brotherhood of Teamsters,* 439 U.S. 551, 99 S.Ct. 790, 58 L.Ed.2d 808 (U.S. 1979); *Daniel v. International Brotherhood of Teamsters,* 561 F.2d 1223, 1229 n.8 (7th Cir. 1977), *rev'd,* 439 U.S. 551, 99 S.Ct. 790, 58 L.Ed.2d 808 (1979). Thus, neither the Court of Appeals for the Seventh Circuit nor the Supreme Court was asked to review the class action issue.

F.R.D. 22, 28 (W.D.Pa.1977). And plaintiff has not yet come forward with anything of the sort. Accordingly, I cannot consider any "future" class members in making the determination as to numerosity.

Thus, for present purposes, the proposed class must be limited to those employees who forfeited credit for covered employment due to breaks in service that either were involuntary or were induced by representatives of their unions or the Trust Fund. The class may include employees who received no benefits at all due to such forfeitures of credit, as well as any employees who simply received smaller benefit payments as a result of such forfeitures. Finally, the class may include employees who sought or received (1) early retirement benefits, (2) normal retirement benefits, or (3) disability retirement benefits, for the break-in-service rule apparently applies without respect to the particular category of benefits that an employee seeks.

Although the class as defined above *might* satisfy the numerosity requirement, plaintiff has not made a sufficient showing on that score. The only datum in the record relevant to class size is the number of employees who applied for retirement benefits but were denied such benefits because they sustained breaks in service. According to defendant Trust Fund's answers to interrogatories, 39 employees were denied early retirement benefits, 148 employees were denied normal retirement benefits, and 29 employees were denied disability retirement benefits, for a total of 216 employees in all three categories. Defendant Trust Fund's Answers to Second Set of Interrogatories (Document No. 42). At this point, the record does not reveal whether any employees simply received *smaller* pension benefits, in any of the three benefit categories, due to breaks in service. Once this information is compiled, the next—and most important—step would be to sort out from this group of about 216 those employees who (like plaintiff) forfeited some or all of their benefits due to breaks in service *that either were involuntary or were induced by union or Trust Fund representatives.*[3] Only employees who meet this requirement can be "counted" as class members for purposes of the numerosity requirement. The task of isolating these employees may well be laborious, and in the end it may only serve to demonstrate that joinder of all such employees is eminently practicable. But I cannot say, based on the present skimpy record, that the employees who fit this description are sufficiently numerous to warrant class action treatment. I shall therefore enter an order denying plaintiff's motion for class action certification without prejudice to its resubmission upon an expanded record.

### IBT'S MOTION FOR SUMMARY JUDGMENT ON COUNT II

IBT seeks summary judgment on plaintiff's Taft-Hartley Act claim. It further contends that once this summary judgment is entered, Count III—the pendent state-law claim—must be dismissed for lack of subject-matter jurisdiction insofar as it runs against IBT. I believe that IBT is not entitled to summary judgment at this time, however, and I therefore need not reach IBT's contentions involving Count III.

IBT seeks summary judgment on the following basis. A joint pension fund may run afoul of section 302(c)(5) either (1) because one of its eligibility provisions, such as a break-in-service rule, is arbitrary and exclusionary, or (2) because the fund's trustees have applied one of the eligibility provisions in an arbitrary and exclusionary fashion. On the present record, the uncontroverted facts show that IBT had nothing to do with either the formulation of the challenged break-in-service rule or its application to plaintiff. Therefore, the argument runs, IBT is entitled to judgment in its favor as a matter of law.

---

**3.** I leave for another day the problems that will arise in defining "involuntary" and "induced" as they are used here. Based on the limited record now before me, the use of those terms, which are drawn from plaintiff's legal theory, seems a reasonable way of narrowing the class to its proper scope. Certainly the proposed class, when restricted in this fashion, is much narrower than the broad class plaintiff originally sought to represent.

Although I am not convinced that summary judgment would be appropriate at this point, IBT's argument properly draws in question whether any basis exists for imposing liability on IBT under the Taft-Hartley Act. Certainly it is difficult, even on a close reading of the complaint, to isolate the acts or omissions of IBT upon which plaintiff seeks to predicate liability here. And plaintiff's brief, which essentially incorporates the brief filed by defendant Trust Fund, does little to clarify matters. The thrust of plaintiff's argument (or, more accurately, Trust Fund's argument), as I understand it, is that IBT may be liable under principles of agency for the acts or omissions of Local 107 and/or defendant Cohen, an IBT trustee. That may or may not be the case, but plaintiff has offered no sustained discussion of the particular acts or omissions of those defendants that might render *them* liable under section 302, just as he has failed to explain the agency relationship that assertedly warrants imposing liability on IBT.

The problem here is that the reported decisions shed little light on the scope of a *union's* civil liability in a case of this sort.[4] Typically, an employee who contends that a break-in-service rule (or some other eligibility provision) amounts to a structural defect in a pension plan will bring an action against the trust fund itself, or against the fund and its officers. The employee's union, on the other hand, is rarely made a party to the litigation. *See also Barrett v. Thorofare Mkts., Inc.,* 452 F.Supp. 880, 884 (W.D.Pa.1978). Should the court find that a structural defect exists, it can usually grant the employee complete relief (including the benefits he seeks) by enjoining the fund and its officers from applying the challenged eligibility provision. It matters not whether the union was "responsible" for drafting or implementing that provision. Thus, naming the union as an additional party defendant serves little purpose, and most "structural defect" cases under section 302(e) proceed without the union.

So far as I can tell from the record, this case is no different from the "typical" section 302(e) case just described. Thus, even if plaintiff can ultimately establish that IBT was involved in implementing the challenged break-in-service rule, I fail to see what he hopes to accomplish by proceeding against IBT on Count II. In the event that I certify a limited class of employees, along the lines discussed earlier, and then rule in their favor on the section 302 claim, surely a prohibitory injunction directed at the Trust Fund and its trustees would afford complete relief to plaintiff and the unnamed class members.[5] Plaintiff has nowhere impugned the solvency of the Trust Fund, and I suppose its assets would prove sufficient were I to enjoin its trustees from applying the break-in-service rule to employees whose breaks either were involuntary or were induced by representatives of their unions or the Trust Fund.

When I raised these issues at oral argument, plaintiff's counsel acknowledged that he had no particular reason for opposing IBT's motion. Transcript (Document No. 48) at 7–8. Counsel for defendant Trust Fund, on the other hand, insisted that IBT was not entitled to summary judgment on

---

4. The statute itself affords little guidance. Section 302(e) provides in pertinent part that the district courts "shall have jurisdiction, for cause shown, . . . to restrain violations of [section 302]." 29 U.S.C. § 186(e) (1976). The court of appeals has observed:

"Although the extent of the jurisdiction under section 302(e) is not yet settled, this much is certain: a federal district court does have jurisdiction under the section to enforce a trust fund's compliance with the statutory standards set forth in subsection (c)(5) by eliminating those offensive features in the structure or operation of the trust that would

cause it to fail to qualify for a (c)(5) exception."
*Associated Contractors v. Laborers Int'l Union,* 559 F.2d 222, 225 (3d Cir. 1977) *(footnote and citations omitted).*

5. I note that plaintiff seeks exemplary damages in the amount of $100,000. Perhaps he looks to IBT to recover a sum that large. But § 302(e) appears to contemplate injunctive relief, and I have found no authority for an award of exemplary damages where a structural defect is held to exist. *See generally Mobile Mechanical Contractors Ass'n v. Carlough,* 456 F.Supp. 310, 328–29 (S.D.Ala.1978).

Count II. I remarked that this alignment of parties was anomalous: A defendant's motion for summary judgment was being resisted primarily by *another* defendant, one with no cross-claims against the moving defendant. Shortly after oral argument, however, defendant Trust Fund filed a cross-claim against IBT. Document No. 47. The cross-claim simply states, in very general terms, that if Trust Fund "is found to be liable to plaintiff, I.B.T. is liable over to" Trust Fund. *Id.* ¶ 10. Counsel for IBT, upon receipt of the cross-claim, submitted a letter requesting that I treat IBT's motion for summary judgment as applicable to Trust Fund's cross-claim, and I shall do so.

Both Count II of the complaint and Trust Fund's cross-claim, then, seek to impose liability on IBT. Neither plaintiff nor Trust Fund has come forward with any specific authority to support their contentions that a union may be held liable in a section 302 case such as this. The parties have debated IBT's involvement (direct or imputed) in formulating the break-in-service rule and applying it to plaintiff, but they have failed to tie the facts presented here to any solid analysis of a union's civil liability for structural defects in a joint employer-union pension fund. However, because the issue is a novel one, and because I have received scant guidance from the parties, I am reluctant to foreclose the possibility that either plaintiff or Trust Fund may have some kind of viable claim against IBT. IBT, as the moving party here, has the burden of demonstrating that it is entitled to summary judgment as a matter of law, Fed.R.Civ.P. 56(c), and this it has not yet done. Accordingly, I shall deny the motion at this time, without prejudice to IBT's right to renew its motion if, and when, appropriate.