## Walter DUDO

v.

**Charles J. SCHAFFER, Jr., Richard W. Cutaiar, William Lemon, Vincent Dagen, Maurice R. Schurr, William J. Gormley, Joseph Cimino, Teamsters Pension Trust Fund of Philadelphia and Vicinity, Highway Truck Drivers & Helpers Local No. 107, International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, Teamsters Joint Council No. 53, International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America.**

Civ. A. No. 78–467.

United States District Court, E. D. Pennsylvania.

Feb. 12, 1982.

See also, D.C., 82 F.R.D. 695.

Lewis Kates, Philadelphia, Pa., for plaintiff.

William J. Einhorn, Philadelphia, Pa., for defendant Local 107.

Nicholas N. Price, Philadelphia, Pa., for defendant Trust Fund.

## OPINION

LUONGO, District Judge.

This is an action brought under § 302(c)(5) of the Labor Management Relations Act, 29 U.S.C. § 186(c)(5). Plaintiff, Walter Dudo, is a former member of the Highway Truck Drivers and Helpers Union, Local 107 of the International Brotherhood of Teamsters (Local 107). He was denied pension benefits from the Teamsters Pension Trust Fund of Philadelphia and Vicinity on the ground that he had a break in service with employers participating in the union pension plan. On August 10, 1981, I entered an order granting defendant Local 107's motion for summary judgment and denying plaintiff's joint amended and further motion for class action certification and for further discovery (hereinafter referred to as "resubmitted motion for class certification").

On August 20, 1981, plaintiff filed motions (a) to certify for immediate appeal pursuant to 28 U.S.C. § 1292(b) the August 10, 1981 order granting Local 107's motion for summary judgment, and (b) to certify the order denying its resubmitted motion for class certification (document No. 87). On October 1, 1981, plaintiff filed a motion, purportedly under Rule 54(b), requesting that I reconsider and vacate the August 10, 1981 order denying his resubmitted motion for class-certification and his request for leave to conduct additional discovery (document No. 93). In addition, in the October 1, 1981 motion, plaintiff requested that I re-

consider and vacate a protective order entered during the course of discovery on the class certification motion, plaintiff contending that the protective order prevented him from obtaining class certification.[1]

### I. Motions for Certification for Immediate Appeal

### A. Order Granting Local 107's Motion for Summary Judgment

Dudo requests that the order granting Local 107's motion for summary judgment be certified for immediate appeal pursuant to § 1292(b), which provides:

(b) When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

As is clear from the words of § 1292(b), there are three requirements for the issuance of a certification. First, the order from which appeal is sought must involve a controlling question of law. Second, there must be substantial ground for difference of opinion on the resolution of that question of law and, third, it must appear that an immediate appeal may materially advance the ultimate termination of the litigation.

Dudo's claims against Local 107 are set forth in greater detail in the two earlier opinions in this case. *Dudo v. Schaffer,* 82 F.R.D. 695 (E.D.Pa.1979) (*Dudo I*); *Dudo v. Schaffer,* 91 F.R.D. 128 (E.D.Pa.1981) (*Dudo II*). Briefly stated, Dudo essentially claims that Local 107's president, Raymond Cohen, failed to warn him of the effect that accepting a non-covered job would have on his pension rights, and that "Cohen erroneously advised him to accept a job which had been offered to him advising that it would enable him to accumulate pension benefits, when in fact acceptance of that job, which was non-covered employment, resulted in Dudo's disqualification from pension benefits." *Dudo II* at 130.

In granting the motion for summary judgment I concluded "that Dudo [did not] present a material issue of fact as to whether he was induced by any official of Local 107 to take a non-covered job...." *Dudo* at 134. I also concluded that Dudo failed to establish the existence of a material issue of fact "regarding the union's purported fiduciary duty to advise him about his rights under the pension plan." *Id.*

Dudo advances as the alleged controlling questions of law (1) whether it was proper for me to exclude Dudo's affidavit in determining that there was no material issue of fact as to whether he was induced to break his service, and (2) whether I erred in determining that Local 107 was not under a duty to warn Dudo of the effect of service breaks.

■ I agree that exclusion of Dudo's affidavit could be viewed as a controlling question of law since it resulted in the grant of Local 107's motion for summary judgment, but I do not agree that there is substantial ground for difference of opinion on that issue. The reasons I refused to consider Dudo's affidavit (which directly contradicted Dudo's signed deposition testimony stating that he never discussed his pension rights with Cohen) are set forth in detail in *Dudo II* and will not be restated

---

1. In addition to filing his motion for reconsideration on October 1, 1981, plaintiff, without permission of the court as required by both F.R. Civ.P. 7(a) and Local R.Civ.P. 20(c), filed a reply memorandum to defendants' timely response in opposition to plaintiff's motion for

appellate certification of the order denying the resubmitted motion for class certification. In his reply in support of appellate certification, plaintiff makes arguments similar to those he made in support of his motion for reconsideration.

here. Essential to my determination was the fact that Dudo submitted his affidavit *after* I had pointed out during oral argument on the motion for summary judgment that there was nothing in the record tending to support his claim that he was advised or induced to accept non-covered employment.

It is well established that the court need not consider affidavits submitted on the day of, or after, hearing, F.R.Civ.P. 56(c); *De-Long Corporation v. Raymond International, Inc.*, 622 F.2d 1135, 1140 (3d Cir. 1980), overruled in part on other grounds *Croker v. Boeing Co.*, 662 F.2d 975 (3d Cir. 1981); *Jones v. Menard*, 559 F.2d 1282, 1285 n.4 (5th Cir. 1977); *Blackburn v. Prudential Lines, Inc.*, 454 F.Supp. 1302, 1306 (E.D.Pa. 1978). As Chief Judge Lord noted in *Blackburn*, whether the affidavit should be admitted is solely within the court's discretion. *Id.* The fact that the late submitted affidavit was in conflict with Dudo's pre-argument deposition testimony was simply one circumstance leading me to exercise my discretion not to consider the affidavit. Thus, insofar as the instant motion for appellate certification is concerned, the fact that Dudo submitted the affidavit *after* the argument on the motion is crucial. Although plaintiff correctly notes that there is a split of authority on the question whether a *timely* submitted affidavit which contradicts the defendant's prior deposition testimony is entitled to consideration on a motion for summary judgment, *compare Perma Research and Development Co. v. Singer Co.*, 410 F.2d 572 (2d Cir. 1969), *with Guarantee Insurance Agency Co. v. Mid-Continental Realty Corporation*, 57 F.R.D. 555 (N.D.Ill.1972), he has cited no authority for the proposition that the court may not, in determining whether to exercise its discretion to admit an *untimely* affidavit, consider the fact that the affidavit contradicts the affiant's prior deposition testimony. Accordingly, plaintiff has not persuaded me that there is substantial ground for difference of opinion on the exercise of my discretion in deciding not to consider the affidavit.

Dudo contends that there is another controlling legal issue: whether Local 107 was under a duty to warn Dudo of the consequences of accepting non-covered employment. As with his class action motion (which will be discussed *infra*) Dudo misstates what was decided. I ruled that, in order to establish Local 107's liability for breach of fiduciary duty in the administration of the pension trust, Dudo would have to prove that the Union was "so deeply involved in pension trust affairs as to be a *de facto* trustee." *Dudo II* at 15. The basis for that legal conclusion was *Nedd v. United Mineworkers of America*, 556 F.2d 190 (3d Cir. 1977), *cert. denied*, 434 U.S. 1013, 98 S.Ct. 727, 54 L.Ed.2d 757 (1978). Plaintiff has cited no case which causes me to question the correctness of my interpretation of *Nedd*. Neither *Burroughs v. Board of Trustees*, 542 F.2d 1128 (9th Cir. 1976), *cert. denied*, 429 U.S. 1096, 97 S.Ct. 1113, 51 L.Ed.2d 543 (1977) nor *Knauss v. Gorman*, 583 F.2d 82 (3d Cir. 1978), supports his claim that unions are vicariously liable for structural defects in pension plans. In those cases the courts did not address the issue of a union's liability for structural violations since both cases involved claims against pension trusts and trustees. Dudo has mischaracterized what the question of law is in this case, and he has failed to establish that there is ground for substantial difference of opinion concerning my resolution of what I regard as the controlling legal issue: *i.e.*, whether Dudo had the burden to prove that Local 107 was a *de facto* trustee in order to establish liability against Local 107. Further Dudo has not pointed to anything in the record which would cause me to question my conclusion that there was no evidence to create a material factual issue as to whether Local 107 was a *de facto* trustee (even assuming that that issue could properly be characterized as a "controlling legal question").

Finally, I am not persuaded that certification of the partial summary judgment would materially advance the ultimate termination of the litigation. If Dudo is permitted to immediately appeal the grant of summary judgment in Local 107's favor, it

will result in piecemeal appeals and will serve no countervailing interest in judicial economy. Immediate appeal would resolve only two issues, (1) whether I erred in holding that there was no material issue of fact as to whether Dudo was induced by any official of Local 107 to take a non-covered job and (2) whether I erred in holding that Dudo failed to raise a material issue of fact regarding the union's purported fiduciary duty to warn him of the effect of taking a non-covered job. Resolution of these issues by the Court of Appeals will provide no guidance for resolution of the remaining claim, i.e., whether the trust fund and trustees' failure to warn Dudo of the effect of the break in service provision of the pension plan constituted a violation of § 302 of the Labor Management Relations Act, 29 U.S.C. § 186(c)(5).

Further, trial of the remaining issues at this time may make unnecessary an appeal for Dudo. For example, if he proceeds against the trust fund and trustees and is successful, he may obtain the full measure of relief he seeks, in which event he might find it not worthwhile to pursue the claim against the Union. Of course, if he is successful against the trust fund and the trustees, the latter might very well appeal, but in that event Dudo will have the opportunity to file an appeal against Local 107.

If Dudo is unsuccessful in his suit against the trust fund and the trustees, on appeal he will obtain review of all of his claims, those against Local 107 as well as those against the trust fund and the trustees. In such event, if the Court of Appeals deems a retrial necessary, its rulings will at least clearly delineate the proper issues for trial, e.g., whether there is a structural defect in the plan; whether there is a material issue of fact as to whether Local 107 can be liable for such structural defect; whether there is a material issue of fact as to whether any official of Local 107 induced Dudo to take non-covered employment.

No matter which scenario is envisioned, there is a possibility of more than one trial and one appeal, but it is quite apparent to me that permitting immediate appeal does not materially reduce the potential for multiple trials and appeals, in a word, immediate appeal will not "advance the ultimate termination of the litigation." Accordingly, plaintiff's motion pursuant to 28 U.S.C. § 1292(b) for certification for immediate appeal of the order granting Local 107's motion for summary judgment will be denied.

Considering the lack of merit in plaintiff's § 1292(b) motion it is somewhat surprising that he chose to proceed under that provision. Normally, where judgment is entered as to less than all parties in a multi-party case, the method of seeking immediate appeal is by moving for judgment pursuant to F.R.Civ.P. 54(b). *See Ford Motor Credit Company v. S. E. Barnhart & Sons, Inc.*, 664 F.2d 377 (3d Cir., 1981). Although at oral argument plaintiff stated that he had moved for entry of final judgment under Rule 54(b), review of the motions filed reveals that he made no such motion and that he only sought certification under § 1292(b) of the order granting Local 107's motion for summary judgment. The sole reference to Rule 54(b) is in plaintiff's motion for reconsideration of the denial of class certification, wherein he contends that 54(b) permits more than ten days for the filing of a motion for reconsideration. In any event, whether plaintiff filed a motion under 54(b) seeking the entry of final judgment is academic since I would not have directed entry of final judgment under Rule 54(b) as to the order granting Local 107's motion for summary judgment.

Rule 54(b) provides:

When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

There is no question that the order as to Local 107 is a " 'judgment' in the sense that

it is a decision upon a cognizable claim for relief, and it is 'final' in the sense that it is 'an ultimate disposition of an individual claim entered in the course of a multiple claims action.'" *Curtiss-Wright Corporation v. General Electric Company,* 446 U.S. 1, 7, 100 S.Ct. 1460, 1465, 64 L.Ed.2d 1 (1980), *quoting, Sears Roebuck & Co. v. Mackey,* 351 U.S. 427, 76 S.Ct. 895, 100 L.Ed. 1297 (1956). But Rule 54(b) permits entry of final judgment only "upon an express determination that there is no just reason for delay." As stated by the court in *Curtiss-Wright,* "[i]t is left to the sound judicial discretion of the district court to determine 'the appropriate time' when each final decision in a multiple claims action is ready for appeal. This discretion is to be exercised 'in the interest of sound judicial administration.'" *Id.* 446 U.S. at 8, 100 S.Ct. at 1465, *quoting Sears Roebuck & Co. v. Mackey,* 351 U.S. 427, 437, 76 S.Ct. 895, 900, 100 L.Ed. 1297 (1956). The purpose of considering the interest of the sound administration of justice is to ensure that the federal policy disfavoring piecemeal appeals is preserved. *Curtiss-Wright, supra,* 446 U.S. at 8, 100 S.Ct. at 1465. Because of this policy, a Rule 54(b) certificate "should not be entered routinely or as a courtesy or accommodation to counsel." *Panichella v. Pennsylvania Railroad Company,* 252 F.2d 452, 455 (3d Cir. 1958). *See Allis-Chalmers Corp. v. Philadelphia Electric Co.,* 521 F.2d 360, 365 (3d Cir. 1975).

I have already set forth, in the discussion of § 1292(b), the reasons why I believe that the interests of the sound administration of justice would not be served by allowing Dudo to appeal. I reiterate that immediate appellate consideration of Dudo's claims against Local 107 would only delay the ultimate termination of this litigation. Appellate resolution of those claims will provide little, if any, guidance as to the trial of the claim against the remaining defendants. The remaining claim can likely be resolved within a relatively short period of time, and the interests of justice will not be served by the delay attendant an immediate appeal. Dudo has advanced no argument in favor of a Rule 54(b) certificate sufficiently compelling to outweigh the advantage of prompt disposition of the remaining issues. Since the trial court should issue a Rule 54(b) certificate only "in the infrequent harsh case", *see Allis-Chalmers Corp. v. Philadelphia Electric Co., supra,* 521 F.2d at 365, *quoting Panichella v. Pennsylvania Railroad Company,* 252 F.2d 452 (3d Cir. 1958), and since I perceive no harshness in postponing the right to appeal the summary judgment in favor of Local 107, I will not issue the certificate.

## B. *Denial of the Resubmitted Motion for Class Certification*

A brief explanation of the procedural background of the class action aspects of this litigation is essential to an understanding of both plaintiff's motion for appellate certification and his motion for reconsideration. In June of 1979, I denied Dudo's initial request for class certification because there was not a sufficient record on which to determine whether the numerosity requirement of F.R.Civ.P. 23(a)(1) was satisfied. *Dudo I.* At that time Dudo sought to represent a class consisting of "all present, past and future participants in the Teamsters Pension Trust Fund of Philadelphia and Vicinity", *id.* at 698, but I noted that he was, in fact, challenging the "break-in-service rule *only* insofar as it required a forfeiture of credited service where an employee's break in service either was involuntary or was induced by representatives of the employee's union or Trust Fund." *Id.* at 699 (emphasis added). Because I could not determine from the record developed at that time whether there were so many other persons with such claims that their joinder would be impracticable, I denied the motion, without prejudice, to allow plaintiff the opportunity to expand the record through further discovery.

On February 26, 1980, I ordered the pension fund to provide Dudo with the names and addresses of Teamsters' members who had been denied pension benefits because of breaks in service, and I approved a questionnaire designed to elicit the circumstances underlying the service breaks. I prohibited counsel from communicating with the

persons whose names and addresses were thus supplied, other than through the questionnaire. (Order, February 26, 1980, Document No. 70) (hereinafter protective order). Two mailings were sent out. Responses to the second mailing were due in July of 1980. Dudo took no action with respect to class certification until he filed his resubmitted motion on June 18, 1981, almost a year after the answers to the second mailing of the questionnaire were due. On August 10, 1981, I entered the order denying the motion for class certification.

■ Turning to Dudo's motion for immediate appeal of the denial of class certification, it is clear that in order for a denial of class certification to be "appealable as an interlocutory matter, the class certification decision must involve special circumstances prompting certification by the district judge under 28 U.S.C. § 1292(b) . . ." *Sullivan v. Pacific Indemnity Company*, 566 F.2d 444 (3d Cir. 1977). *See DeMasi v. Weiss*, 669 F.2d 114, at 119 (3d Cir. 1982). This means that the order must involve a controlling question of law as to which there is substantial ground for difference of opinion, and it must be shown that immediate review of the order will materially advance the ultimate termination of the litigation.

At the outset I note that plaintiff's § 1292(b) motion has not correctly identified the controlling question of law underlying the denial of class certification. Plaintiff incorrectly asserts that I denied certification solely on the ground that his resubmitted motion was untimely and that he had failed to establish the requisite numerosity for class certification. Apparently plaintiff argues that the precise legal questions are whether failure to timely resubmit a motion justifies denial of class certification and whether numerosity is strictly a legal determination.

■ The only problem with plaintiff's statement of these legal questions is that they are not the questions I decided. While I noted that plaintiff's dilatory behavior violated the spirit of promptness embodied in Local Rule of Civil Procedure 27(c) (*Dudo II* at 136), my denial of certification was not based on any technical violation of the rule. Rather, the untimeliness coupled with plaintiff's counsel's lack of effective advocacy on behalf of the class led me to conclude that plaintiff was not an adequate representative of the class. *Dudo II* at 136, *citing East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 405, 97 S.Ct. 1891, 1897, 52 L.Ed.2d 453 (1977). The matter of adequacy of a class representative is not legal question, it is a factual inquiry, resolution of which depends on all the facts and circumstances of a particular case and is entrusted to the discretion of the trial court. *Susman v. Lincoln American Corporation*, 561 F.2d 86, 90 (7th Cir. 1977); *Wetzel v. Liberty Mutual Insurance Co.*, 508 F.2d 239, 245–247 & n.6 (3d Cir.), *cert. denied*, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975).

In the instant case I found that Dudo was not an adequate representative because "[he] delayed unduly in resubmitting the motion for class-action certification; failed to establish that there was a class of claimants with claims similar to his; failed to establish that his claim is representative of the class; failed adequately to identify the members of the class and their number; and ultimately failed to identify a theory of liability suitable for class action treatment."[2] *Dudo II* at 138.

In *Link v. Mercedes-Benz of North America, Inc.*, 550 F.2d 860, 862 (3d Cir. 1977) (en banc), the court stated:

."We have taken the position that 'to qualify for interlocutory review in this circuit, a class certification decision must be attended by special factors which take

---

**2.** While plaintiff is arguably technically correct in stating that I found that he did not meet the numerosity requirement, I actually found that plaintiff had failed to articulate the class he purported to represent and had failed to supply any factual indicia of how many persons were in the class. Accordingly, again, on the resubmission, I was unable to determine with any degree of certainty how numerous the class was. This factor, however, was but one of several which led me to conclude that Dudo could not adequately represent the class.

it outside the ambit of the general rule. *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 756 (3d Cir.), *cert. denied*, 419 U.S. 885 [95 S.Ct. 152, 42 L.Ed.2d 125] (1974).'" 550 F.2d at 860, quoting *Kramer v. Scientific Control Corporation*, 534 F.2d 1085, 1087 (3d Cir. 1976).

The *Link* court did not define what constituted "special factors", but it pointed out that it had approved § 1292(b) certification only where there were "overriding legal issues." *Id.* at 863. This is consistent with the Supreme Court's admonition that "indiscriminate allowance of appeals from ... discretionary orders [denying class certification on the facts of a particular case] is plainly inconsistent with the policies promoted by § 1292(b)." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 465, 477, n.30, 98 S.Ct. 2454, 2456, 2462, n.30, 57 L.Ed.2d 351 (1978). In my view, the determination that Dudo was not an adequate representative does not present an overriding legal issue difficult to resolve. Further, in light of the fact that the deficiencies noted above occurred on Dudo's second attempt to obtain class certification, I do not believe that there are substantial grounds for difference of opinion that I acted within proper bounds in making the determination of inadequacy. Plaintiff's failure to present the resubmitted motion within time weighs heavily in the determination that he will not adequately represent the class. *See East Texas Motor Freight, Inc. v. Rodriquez, supra*, 421 U.S. at 405, 97 S.Ct. at 1897. The cases cited by plaintiff are not persuasive since, in each, the court refused to deny certification solely on the grounds of untimeliness. *See e.g., Muth v. Dechert Price & Rhodes*, 70 F.R.D. 602 (E.D.Pa. 1976); *Gilinsky v. Columbia University*, 62 F.R.D. 178 (S.D.N.Y.1970); *Souza v. Scalone*, 64 F.R.D. 654 (N.D.Cal.1974), *vacated*, 563 F.2d 385 (9th Cir. 1975).

■ In the reply memorandum Dudo's counsel contends that the deficiencies in his representation were caused by the protec-

tive order which limited Dudo's ability to communicate with prospective class members. Counsel contends that the order violated both *Gulf Oil Company v. Bernard*, 452 U.S. 89, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981) and *Coles v. Marsh*, 560 F.2d 186 (3d Cir.), *cert. denied*, 434 U.S. 985, 98 S.Ct. 611, 54 L.Ed.2d 479 (1977), and constitutes a controlling legal issue.[3] In my view, the entry of the protective order does not involve a controlling legal issue. In this circuit the law relating to communications with class members had been announced in *Coles v. Marsh*, decided prior to entry of the protective order. *Gulf Oil Company v. Bernard*, decided by the Supreme Court last year, does not differ from *Coles.* Accordingly, the legal standards to be applied to protective orders when the one in this case was issued were well defined. It was my view that, under the facts and circumstances of this case, imposition of a protective order was warranted and plaintiff did not argue to the contrary. Plaintiff's counsel was aware of *Coles v. Marsh*, yet did not seek a hearing on the protective order. The order ultimately entered was virtually identical to the one submitted by plaintiff's counsel. I cannot conclude, therefore, that the entry of the order involved any overriding legal issues. It was, instead, a discretionary exercise in the management of the class action.

Further, the order from which plaintiff seeks to appeal is not the protective order, it is rather the order denying his resubmitted motion for class certification. This motion had been denied on the ground that plaintiff could not adequately represent the class. If plaintiff's argument is that the protective order caused plaintiff's inadequacies, that, in my view, is a factual issue and not a legal one. Plaintiff, however, did not raise, in his resubmitted motion for class certification, the issue of the effect of the protective order on counsel's ability to obtain information. Since the effect of the protective order was not raised or considered in the disposition of the class certifi-

---

**3.** I will outline in more detail the circumstances underlying the entry of the protective order when I discuss plaintiff's motion for reconsideration of that order.

cation motion, I do not see how it can be viewed as controlling. But whether plaintiff can rely on the protective order as the controlling issue of law in this case is academic since I cannot find that immediate appeal of the denial of the class certification issue will ultimately advance the termination of the litigation.

As I noted above, the remaining claims can be resolved fairly rapidly. Appellate resolution of the class certification issue will not help to resolve those claims. Indeed, immediate appeal of the class certification issue may be a hollow act. If Dudo's individual claim is tried to judgment, and if Dudo is unsuccessful here and on appeal, the appellate court might find it unnecessary to consider the class certification issue. Accordingly, in my view, immediate appeal would not advance ultimate termination of the litigation.

## II. *"Motion to Reconsider and Vacate Orders"*

Dudo also filed a motion, purportedly under F.R.Civ.P. 54(b), requesting that the February 26, 1980 protective order and the August 10, 1981 order denying his resubmitted motion for class certification and further discovery be reconsidered and vacated. (Document 93).[4] Dudo's motion is primarily directed to the protective order. He asserts that that order prevented him from ascertaining who was in the class, and that the restriction on communication resulted in denial of the resubmitted motion for class certification and of his request for further discovery. Plaintiff contends that the protective order was invalid in light of the Supreme Court's opinion in *Gulf Oil Company v. Bernard*, 452 U.S. 89, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981) and the Third Circuit Court of Appeals' decision in *Coles v. Marsh*, 560 F.2d 186 (3d Cir.), *cert. denied*, 434 U.S. 985, 98 S.Ct. 611, 54 L.Ed.2d 479 (1977).

■ At the outset it should be noted that Rule 54(b) does not apply to plaintiff's motion for reconsideration and that plaintiff's

motion is untimely under the applicable local rule of civil procedure, L.R.Civ.P. 20(g). Plaintiff takes out of context the provision in Rule 54(b) that an order "is subject to revision at any time prior to the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." A full reading of the Rule reveals that the cited portion of Rule 54(b) is applicable only to an order "which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties." F.R.Civ.P. 54(b). In other words, Rule 54(b) only applies where there has been "an ultimate disposition of an individual claim entered in the course of a multiple claims action." *Curtiss-Wright Corporation v. General Electric Company, supra.* Accordingly, the time provision in 54(b) relied on by plaintiff applies only to those orders which, if there be "no just cause for delay," could be properly certified for appeal under Rule 54(b). Because, as stated earlier, class certification orders are interlocutory, appealable only under § 1292(b), *Sullivan v. Pacific Indemnity Company*, 566 F.2d 444, 445 (3d Cir. 1977), plaintiff's motion for reconsideration of the resubmitted motion for class certification is not properly brought under Rule 54(b). *Cf. United States Gypsum Company v. Schiavo Brothers*, 668 F.2d 172, at 176, 177 & n.3–4 (3d Cir. 1981) (Court listed federal and local rules granting right to seek reconsideration. Rule 54(b) is not included.).

■ This motion is, therefore, governed by the Eastern District of Pennsylvania's Local Rule of Civil Procedure 20(g) which provides: "Motions for reconsideration or reargument shall be served within ten (10) days after the entry of the judgment, order, or decree concerned." L.R.Civ.P. 20(g). Clearly, the request for reconsideration was filed well beyond ten days after the orders were filed. Plaintiff has not set forth good cause for his delay in moving for reconsideration. His argument that *Gulf Oil Company v. Bernard* is new law is simply

---

4. At argument, Dudo's counsel denied having filed a motion for reconsideration. Document No. 93, filed by Dudo's counsel on October 1, 1981, is entitled "Motion to Reconsider and to Vacate Orders".

wrong. That opinion was handed down on June 1, 1981, a week prior to argument on the resubmitted motion for class certification, and more than two months before entry of the August 10, 1981 order. Furthermore, *Gulf Oil* is fully consistent with the Third Circuit's 1977 decision in *Coles v. Marsh.* Since the effect of *Coles* was discussed before the protective order issued (Transcript, November 9, 1979, Document 65 at 13), plaintiff has simply not shown good cause for the untimely filing of the motion for reconsideration.

▆ In addition to suffering from untimeliness, the motion also lacks merit both because the record reveals that the protective order was justified and because it was entered with plaintiff's counsel's consent. The February 26 order was entered following discussions between the court and counsel for the parties concerning plaintiff's interrogatories which sought the names and addresses of persons who had been denied disability or retirement benefits because of breaks in service. Plaintiff sought this information in an attempt to establish the requisite numerosity for class certification. The Pension Fund generally opposed release of the names and addresses, but requested in the alternative that, if the court ordered it to release the names, it do so subject to a protective order pursuant to F.R.Civ.P. 26(c).[5] The Pension Fund's initial proposal was that the parties would agree to a questionnaire worded so as to elicit the reasons for breaks in service, and that the court would send the questionnaire to the designated recipients. Under this proposal the responses were to be received and evaluated by the court. As framed by the Pension Fund, these initial responses would indicate "whether further discovery into the reasons for breaks in service of the responding beneficiaries would be appropriate." (Document 61 at 5–6). Underlying Pension Fund's request was its fear that if plaintiff's counsel had unrestricted access to those who had been denied benefits because of breaks in service, the responses of those persons as to whether their breaks had been involuntary or induced might be colored by counsel's manner of questioning.

At oral argument, the concept of a questionnaire was accepted by the parties. Because of administrative difficulties, however, I declined the invitation to have the court act as a repository for the responses. Instead, I approved an arrangement under which the responses to the agreed upon questionnaire would be mailed to plaintiff's counsel. To insure maximum spontaneity of the responses to the questionnaire, it was agreed that counsel would not communicate with the responders except through the questionnaire. The sole reason for the protective order was to insure that the responses of the recipients of the questionnaire would not be colored by conscious or unconscious suggestion. I opined that under the circumstances of this case, such an order would not run afoul of *Coles v. Marsh,* and

---

5. F.R.Civ.P. 26(c) provides:

(c) Protective Orders. Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the district where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (1) that the discovery not be had; (2) that the discovery may be had only on specified terms and conditions, including a designation of the time or place; (3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery; (4) that certain matters not be inquired into, or that the scope of the discovery be limited to certain matters; (5) that discovery be conducted with no one present except persons designated by the court; (6) that a deposition after being sealed be opened only by order of the court; (7) that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way; (8) that the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court.

If the motion for a protective order is denied in whole or in part, the court may, on such terms and conditions as are just, order that any party or person provide or permit discovery. The provisions of Rule 37(a)(4) apply to the award of expenses incurred in relation to the motion.

plaintiff's counsel did not disagree. (Transcript Nov. 9, 1975 at 13–17).

On February 5, 1980, plaintiff's counsel communicated to the court by letter that, although the parties were not able to agree on the wording of the questionnaire, they had reached agreement on the protective order, a copy of which was supplied to the court. (Letter from Lewis Kates, Esquire, Exhibit II to Brief of Pension Fund, Administrator and Trustees in Opposition to Plaintiff's Motion to Reconsider and Vacate Orders, Document No. 95). This proposed order included a provision preventing communications except as provided in the order, and prohibiting counsel from responding to any inquiries made by recipients of the questionnaire. Ultimately, after the problem of the wording of the questionnaire was resolved, I entered an order including those provisions with slight modification.[6]

Despite plaintiff's counsel's assertion to the contrary, it is apparent from the foregoing that plaintiff's counsel agreed to the entry of the protective order in order to obtain the information he needed to establish the requisite numerosity of the class. At no time until now did plaintiff's counsel contend that the order violated the Third Circuit's ruling in *Coles v. Marsh.* Indeed, until now plaintiff has not contended that the limitation on his right to communicate impeded his ability to establish the purported class.

 Generally, parties are bound by orders entered with their consent unless manifest injustice will result. *See Sherman v. United States,* 462 F.2d 577, 579 (5th Cir. 1972). *See also Morse Boulger Destructor Company,* 239 F.2d 382, 383 (3d Cir. 1956) (stipulation). Here, where plaintiff's counsel was fully aware of the legal attacks which could have been made on the order, and nevertheless agreed to its entry, no

injustice is apparent. To repeat, plaintiff's contention that *Gulf Oil Company v. Bernard* stated a new rule of law is simply wrong. The *Gulf Oil* court held that it was an abuse of discretion for the district court to have entered a broad order limiting all communications without "a weighing of the need for a limitation and the potential interference with the rights of the parties." 452 U.S. at 101, 101 S.Ct. at 2200. This holding reiterated what had earlier been stated by the Court of Appeals for this circuit in *Coles v. Marsh* :

> [To] the extent that the district court is empowered to restrict certain communications in order to prevent frustration of the policies of Rule 23, it may not exercise the power without a specific record showing by the moving party of the particular abuses by which it is threatened.

560 F.2d at 189.

Accordingly, the decision in *Gulf Oil* in no way undercuts plaintiff's consent to the order which was entered with full knowledge of *Coles v. Marsh.* Plaintiff's counsel consented to the protective order in order to obtain discovery. He did not at that point contend that the order was improper in the absence of a specific showing by defendants that plaintiff was acting improperly. In my view, the record warranted the entry of the protective order and the order was proper under *Coles* and *Gulf Oil.* Unlike the orders entered in *Coles* and *Gulf Oil,* the protective order in this case was not a broad based limitation on communication. The order was narrowly drawn and designed to insure that the nature of the action would not consciously or unconsciously be misrepresented to the recipients of the questionnaire, and to insure that the responses to the questionnaire would be untainted to the degree possible. In light of the narrow definition of the class, I regarded as real

---

**6.** Paragraph 7 of the proposed order provided that if counsel received any inquiries from recipients of the questionnaire, they were to direct the inquiring person's attention to a paragraph in the notice accompanying the questionnaire. That paragraph provided that questions were to be stated in writing in a space provided on the questionnaire.

In the protective order actually entered, paragraph 7 prohibited counsel from responding at all to inquiries. But there was clear direction in the questionnaire and notice actually entered, that inquiries by recipients of the questionnaire be set forth in writing on a separate piece of paper (Document 70). Under these circumstances, the change was not substantial.

the potential for suggestiveness. Under *Coles v. Marsh*, such concerns justify a protective order limiting communications, *see* 560 F.2d at 188–189. The order I entered was clearly tailored to meet those concerns. It was intended that, if the responses revealed a need for further discovery on the class aspects, the limitations on communications would be lifted.

Accordingly, in light of plaintiff's consent to the order; the fact that plaintiff's counsel did not, until now, argue that the protective order was the reason that the class certification motion was denied; and the fact that the protective order was justified, plaintiff's motion to reconsider and vacate that order will be denied. Because his attack on the protective order is, in my view, the sole ground[7] for his request that I reconsider and vacate the order denying class certification and further discovery, the motion to reconsider and vacate will also be denied insofar as it encompasses those orders.

---

7. While it is not altogether clear, plaintiff also appears to contend that the denial of the resubmitted class certification motion should be reconsidered because it was error to deny it on the grounds that it was untimely. As was discussed earlier in the discussion on appellate certification, plaintiff's characterization of the rationale underlying denial of the resubmitted motion is incorrect and, therefore, this contention does not warrant further discussion.